JESSE JAMES CRUZ REYES,

        Plaintiff,

vs.

UNITED STATES OF AMERICA, et al.,

        Defendants.

CIVIL CASE NO. 08-00005

**ORDER**

The court accepts and adopts the Magistrate Judge's Report and Recommendation dated February 21, 2013 (ECF No. 179). The court hereby **GRANTS IN PART** Defendants' Motion to Dismiss and **GRANTS** Defendants' Motion for Summary Judgment.

**I.**     **CASE OVERVIEW**

This is a tort action in which Plaintiff Jesse James Cruz Reyes seeks damages for injuries caused by his fall from a scaffold while working for a contractor on a project at Naval Base Guam.

    **A. Factual Background**

Naval Facilities Engineering Command Pacific ("NAVFAC") entered into a contract with Dick Pacific Construction Co., Ltd. ("Dick Pacific") to make improvements to the Fena Water Treatment Plant ("Fena Project") at Naval Base Guam. Jesse James Cruz Reyes ("Plaintiff") was

employed as a laborer by Dick Pacific to work on the Fena Project. On May 17, 2006, Plaintiff was assigned to work on the wall gang form at Filter Back Wash Settling Tank #2 ("Tank #2"). While descending a scaffold, which was provided by Dick Pacific, Plaintiff fell approximately fifteen (15) feet to the concrete floor of Tank #2. There were no direct witnesses of Plaintiff's fall despite there being two other Dick Pacific employees and two employees of a subcontractor in the immediate area at that time.

The scaffold from which Plaintiff fell was initially assembled with two tiers. Between May 16, 2006 and the time of Plaintiff's fall on May 17, 2006, the scaffold was refashioned to three tiers. At the time of Plaintiff's fall, the mid-rail at the access point of the top platform was missing, and the toggle pins that hold the mid-rail in place were either facing the wrong direction or in the open position. The scaffold had not been tagged as unsafe to use.

In its investigation report of the accident, Dick Pacific concluded that the direct cause of Plaintiff's fall was "failure to secure the mid-rail in place" and the indirect cause was "failure to follow scaffold erection procedures, which requires the presence of a competent person during erection, dismantling, or alterations." A report by NAVFAC determined that the root cause of the accident was that the "[s]caffold and associated components were not inspected and certified for use by a Competent Person."

**B. Relevant Procedural Background**

On January 5, 2011, approximately thirty-two (32) months after filing his initial Complaint, Plaintiff filed a Third Amended Complaint ("TAC"), which named as defendants the United States of America, the Department of the Navy, and Defendants Doe 1–98. *See* ECF No. 81. The TAC alleges three causes of actions: Count I – Negligence, Count II – Defective Design, Manufacture, and/or Assembly and Failure to Warn, and Count III – Negligent and Intentional

Infliction of Emotional Distress. The United States and Department of the Navy (collectively "Defendants" or "Government") filed their Answer on January 19, 2011. *See* ECF No. 82.

On July 25, 2011, Defendants filed a Motion to Dismiss the TAC. *See* ECF No. 96. Defendants argue that the court lacks subject matter jurisdiction because: (1) the independent contractor's exception to the Federal Tort Claims Act ("FTCA") precludes claims by employees of independent contractors against the Government; (2) availability of worker's compensation benefits bars recovery against the Government; and (3) the discretionary function exception to the FTCA precludes liability. Additionally, Defendants argue that the emotional distress claim should be dismissed for failure to state a claim.

On August 23, 2011, Plaintiff filed his Opposition to the Motion to Dismiss. *See* ECF No. 108. Plaintiff argues that the independent contractor exception is not applicable in the instant action; that under Guam law, worker's compensation benefits are not an exclusive remedy and does not bar suit against the Government; and that the discretionary function exception did not preclude Government liability under the facts of the instant case. Defendants filed the Reply on September 6, 2011. *See* ECF No. 119. The Motion to Dismiss was referred to the Magistrate Judge for a Report and Recommendation. *See* ECF No. 137.

On January 4, 2012, Defendants filed a Motion for Summary Judgment. *See* ECF No. 152. Defendants allege that subsequent discovery, and clarification that Plaintiff's theory of liability is direct negligence of the Government rather than vicarious liability for the negligent acts of Dick Pacific, demonstrates that there are no genuine issues of any material fact. On February 2, 2012, Plaintiff filed an Opposition and Amended Opposition. *See* ECF Nos. 157 and 159. On February 15, 2012, Defendants filed the Reply. *See* ECF No. 165. The Motion for Summary Judgment was referred to the Magistrate Judge for a Report and Recommendation. *See* ECF No. 154.

On April 10, 2012, the Magistrate Judge heard arguments on the motions and took the motions under advisement. *See* ECF No. 173. The Magistrate Judge issued the Report and Recommendation ("R&R") on February 21, 2013. *See* ECF No. 179. In the R&R, the Magistrate Judge concluded: (1) the motion to dismiss should be granted in part as the discretionary function exception is available as a defense to Defendants with respect to the allegations referenced in paragraphs 26, 28, and 29 of the TAC; and (2) the motion for summary judgment should be granted because the pleadings show that there is no dispute as to any material fact and Defendants are entitled to judgment as a matter of law as to all counts of the TAC. *Id*. at 32–33.

Plaintiff filed an Objection to the R&R on March 7, 2013. *See* ECF No. 180. Therein, Plaintiff contends that the R&R "wrongly concluded that Defendants owed no duty to provide a safe work environment to Plaintiff or to warn him of the danger of the scaffold." *Id*. at 1. Defendants filed their Response to the Objection on April 29, 2013. *See* ECF No. 183.

## II. JURISDICTION AND VENUE

The court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1331 for Plaintiff's claims under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

Venue is proper in this judicial district, the District of Guam, because all of the events or omissions giving rise to Plaintiff's claims occurred here. *See* 28 U.S.C. § 1391.

## III. APPLICABLE STANDARDS

### A. Standard of Review

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991); *see also* FED. R. CIV. P. 72(b)(3) (stating "[t]he district judge must determine *de novo* any part of the magistrate

judge's disposition that has been properly objected to"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CIV. P. 72(b)(3) (stating a district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions").

A district court's obligation to make a *de novo* determination of properly contested portions of a magistrate judge's report and recommendation does not require that the judge conduct a de novo hearing on the matter. *United States v. Raddatz*, 447 U.S. 667, 676 (1980). Accordingly, the court makes a *de novo* review to those portions of the Report and Recommendation in which the Plaintiff has lodged objections.

**B. Motion for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that a material fact cannot be genuinely disputed, the movant may:

(A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) show[ ] that the materials cited do not establish the…presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).

A fact is material if it might affect the outcome of the suit under the governing substantive law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Thus, the evidence presented in opposition to summary judgment must be "enough to require a jury or judge to resolve the parties' differing versions of the truth at

1 trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Servs. Co.*, 391 U.S. 253, 288–89 (1968)). "The mere existence of a scintilla of evidence…will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

In particular, no "genuine issue" may be found "where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

The opposing party's evidence must be sufficient to create a genuine issue of fact that is material to the outcome of the suit, *whether or not it has the burden of proof at trial*. *See McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1340 (9th Cir. 1987). Thus, "[w]hen the moving party has carried its burden…, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## **IV. DISCUSSION**

Plaintiff objects to the Magistrate Judge's finding that Defendants were not negligent. Plaintiff contends that he has proven the elements of negligence and that the R&R "wrongly concluded that Defendants owed no duty to provide a safe work environment to Plaintiff or to warn him of the danger of the scaffold." Pl.'s Objection at 1, ECF No. 180. Specifically, Plaintiff contends that: (1) the R&R did not consider the Government's status as landowner in the duty analysis; (2) the amount of authority retained by the Government created a duty to provide a safe work environment; and (3) the R&R did not focus on or explore the Government's contractual

duties to dismiss the Site Safety and Health Officer ("SSHO") or to stop work if the SSHO failed to perform his duties. *Id*. at 4, 7, and 8.

### A. Federal Tort Claims Act Framework

The Federal Tort Claims Act ("FTCA") waives sovereign immunity for the negligent conduct of government employees acting within the scope of their employment. It provides that the Government can be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, Guam law is applicable to Plaintiff's claim as Guam is "the place where the act or omission occurred." *Id*.

As a general rule, Guam law provides:

> Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully brought the injury upon himself. The extent of liability in such cases is defined by § 90108 and the law on Compensatory Relief [Title 20 of this Code].

18 GUAM CODE ANN. § 90107 (2012).

The Supreme Court of Guam has recognized that "Title 18 G.C.A. § 90107 finds its source in section 1714 of the California Civil Code." *Guerrero*, 2006 Guam 2 ¶ 11. The Supreme Court of Guam further stated:

> For this reason, and because Guam's statutory language is identical to California's, we look to California case law interpreting the standard of care owed…This is because "[g]enerally, when a legislature adopts a statute which is identical or similar to one in effect in another jurisdiction, it is presumed that the adopting jurisdiction applies the construction placed on the statute by the originating jurisdiction." *Sumitomo Constr. Co., Ltd. v. Zhong Ye, Inc.*, 1997 Guam 8 ¶ 7 (citing Sutherland's Stat. Const. § 52.01 (5th ed.)). Thus, "we look to the substantial precedent developed within that state to assist in interpreting parallel Guam provisions." *O'Mara v. Hechanova*, 2001 Guam 13 ¶ 8 n.1 (observing that where a Guam provision is derived from California, "California case law on this issue is persuasive when there is no compelling reason to deviate from California's interpretation.") (citing *Fajardo v. Liberty House Guam*, 2000 Guam 4 ¶ 17).

*Id*. Accordingly, the court looks to California case law as persuasive authority.

**B. Negligent Exercise of Retained Control**

The R&R looked to section 414 of the Restatement (Second) of Torts for guidance regarding whether Defendants, as the employer of an independent contractor, is subject to liability. *See* R&R at 27, ECF No. 179. Section 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1977). *See also* RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 56(b) & cmt. a (2012) ("§ 414 of the Second Restatement of Torts recognized the hirer's liability when the hirer 'retains the control of any part of the work' and fails 'to exercise his control with reasonable care.' This Section carries this principle forward within the duty framework of this Restatement.").

Plaintiff objects to the application of section 414 because it "regards an employer of an independent contractor (not landowner)" and "NAVFAC was not just an employer of Dick Pacific, but was also the landowner." Pl.'s Objection at 7 and 8, ECF No. 180. The court finds the commentary of the Restatement (Third) of Torts to be instructive with respect to this issue. Comment j of section 55 provides that "[a]n actor might be both a land possessor and a hirer of an independent contractor. In such cases, assessing the actor's responsibility requires analysis under both Chapter 9 [Duty of Land Possessors] and this Chapter [Liability of Those Who Hire Independent Contractors]." RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 55 cmt. j & illus. 10 (applying section 56 to landowner who hired an independent contractor). Accordingly, the principle articulated in section 414 of the Restatement (Second) and section 56 of the Restatement (Third) is applicable here where the Government is both the landowner and hirer of the independent contractor.

Plaintiff contends that even if section 414 is applicable, the amount of authority retained by Defendants created a duty to provide a safe work environment. Pl.'s Objection at 8. Under California law, the hirer of an independent contractor is liable for negligent exercise of retained control "if an employee of an independent contractor can show that the hirer of the contractor *affirmatively contributed* to the employee's injuries." *Hooker v. Dept. of Transp.*, 27 Cal. 4th 198, 214 (2002) (emphasis added).

### 1. Retention of Control

In order for the hirer of an independent contractor to be directly liable for injuries to the contractor's employee, "the hirer must retain some degree of control over the manner in which the work is done, such that the contractor is not entirely free to do the work in the contractor's own manner." RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 56 cmt. c. The degree of control is "more than merely the general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations that need not necessarily be followed, or to prescribe alterations and deviations." *Id*.

In *Kinney v. CSB Constr., Inc.*, 87 Cal. App. 4th 28 (Cal. Ct. App. 2001), cited with approval by the California Supreme Court in *Hooker*, the court found sufficient evidence to raise a triable issue of fact as to whether the general contractor retained sufficient control to trigger a duty when: (1) the subcontractor hired by the general contractor was required to supply all labor, materials, and equipment necessary to complete the subcontractor's work; (2) the general contractor had the right to order any safety means or measures it felt were appropriate on the jobsite; (3) the general contractor employed a site supervisor, who could eliminate or ameliorate safety hazards on the jobsite, whether created by or resulting from the general contractor of one of its subcontractors; (4) the general contractor could suspend work if there was a disagreement with the subcontractor over safety procedures; and (5) the general contractor would have final

say in resolving such a disagreement. *Id*. at 33. The court characterized the defendant as a "general contractor who claims the power to control all safety procedures on the worksite." *Id*. at 30.

In *Zamudio v. City & County of San Francisco*, the court found that summary judgment in favor of the defendants was warranted when: (1) defendants participated in general discussions about workplace safety; (2) defendants did not supervise or direct the subcontractor's means, methods, or procedures of construction or safety precautions; and (3) defendants' inspectors were on the jobsite daily and retained the right to inspect the work for quality control purposes. 70 Cal. App. 4th 445, 453 (Cal. Ct. App. 1999).

In order to determine whether Defendants can be held directly liable for Plaintiff's injuries, the court must first determine the degree of control that was retained by Defendants with respect to safety conditions and whether it is sufficient to trigger a duty to Plaintiff. For this inquiry, the court must review the contract provisions between NAVFAC and Dick Pacific. The parties submitted the relevant portions of the contract that relate to safety responsibilities and/or duties retained by Defendants or otherwise delegated to Dick Pacific. *See* ECF Nos. 176 and 178.

In their submission, Defendants direct the court's attention to section 01525, entitled "Safety and Occupational Health Requirements" of the Fena Water Treatment Plant Upgrade Specification ("Specification"). Defs.' Submission Ex. C4, ECF No. 176-3. Subsection 1.8 provides that the "Contractor shall use a qualified person to prepare the written site-specific APP [Accident Prevention Plan]" and that the "Government considers the Prime Contractor to be the 'controlling authority' for all work site safety and health of the subcontractors." *Id*. at 8. Subsection 1.8 also provides that "[d]isregarding the provisions of this contract or the accepted APP will be cause for stopping of work, at the discretion of the Contracting Officer, until the matter has been rectified." *Id*. at 9. Further, "[s]hould any unforeseen hazard become evident

during the performance of work," "all necessary action shall be taken by the Contractor to restore and maintain safe working conditions" in the interim while a resolution is being devised.

Subsection 1.6.3.2 requires weekly safety meetings at the project site for all employees. It provides that the "Contracting Officer will be informed of the meeting in advance and be *allowed* attendance." *Id*. at 7 (emphasis added). All Dick Pacific and subcontractor employees were required to attend. NAVFAC's presence was not mandatory, and in fact, NAVFAC personnel rarely attended the weekly safety meetings. *See* Buhain Aff. ¶ 15, Ex. B, ECF No. 96-1; Guarin Aff. ¶ 29, Ex. C, ECF No. 96-1.

Subsection 1.6.1.1 provides that a Site Safety and Health Officer ("SSHO"), hired by the Contractor, shall be present "at the work site at all times to perform safety and occupational health management, surveillance, inspections, and safety enforcement *for the Contractor*." Specification at 5, Ex. C4, ECF No. 176-3 (emphasis added). The SSHO's duties include conducting daily safety and health inspections and maintaining a written log, implementing and enforcing accepted accident prevention plans ("APP") and activity hazard analyses ("AHA"), and ensuring subcontractor compliance with safety and health requirements. *Id*. at 6. Pursuant to subsection 1.6.2.1, the SSHO's failure to perform these duties will result in dismissal and a project work stoppage.

Plaintiff directs the court to section 01450N of the Specification, entitled "Construction Quality Control." *See* Pl.'s Submission Ex. 1, ECF No. 178. Subsection 1.15.1 requires a Contractor Production Report to be submitted for each day that work is performed. Said report must contain, among other information, a list of job safety actions taken and safety inspections conducted, including whether scaffold work was done. Additionally, Plaintiff highlights subsection 1.16, which provides:

> The Contracting Officer will notify the Contractor of any detected non-compliance with the foregoing requirements. The Contractor shall take immediate corrective action after

receipt of such notice…If the Contractor fails or refuses to comply promptly, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.

Both parties also submitted various provisions of the Federal Acquisition Regulation ("FAR").[1] FAR 46.401 provides that Government contract quality assurance shall be performed "as *may be necessary* to determine that the supplies or services conform to contract requirements." FAR 46.401(a) (emphasis added). It also requires each contract to "designate the place or places where the Government *reserves the right* to perform quality assurance." FAR 46.401(b) (emphasis added).

Additionally, Defendants cite to FAR 52.236-13, entitled "Accident Prevention," which states that the "*Contractor* shall provide and maintain work environments and procedures which will safeguard the public and Government personnel" and that "the Contractor shall comply with all pertinent provisions of the latest versions of the U.S. Army Corps of Engineers Safety and Health Requirements Manual, EM 385-1-1." FAR 52.236-13(a)(1) and (c) (emphasis added). It further provides:

> Whenever the Contracting Officer becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Government personnel, the Contracting Officer shall notify the Contractor orally, with written confirmation, and request immediate initiation of corrective action…After receiving the notice, the Contractor shall immediately take corrective action. If the Contractor fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken.

FAR 52.236-13(d).

FAR 52.246-12, entitled "Inspection of Construction," states that "[a]ll work shall be conducted under the *general direction* of the Contracting Officer and is subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract." FAR 52.246-12(b) (emphasis added). The provision

---
[1] The Federal Acquisition Regulation is contained in 48 C.F.R. § 1.101 *et seq.*

further states that such inspections and tests "are for the sole benefit of the Government" and "do not relieve the Contractor of responsibility for providing adequate quality control measures" or "from any contract requirements." FAR 52.246-13(c)(1) and (d).

The contract provisions between NAVFAC and Dick Pacific demonstrate that Dick Pacific was the "controlling authority" regarding worksite safety. However, NAVFAC did retain general oversight of the Fena Project to ensure compliance with the terms of the contract by receiving daily reports and reserving the right to conduct compliance inspections. In the event that NAVFAC became aware of noncompliance, it was required to provide notice so that *Dick Pacific* could take corrective action. If Dick Pacific failed or refused to take corrective action, then NAVFAC had the discretion to order a work stoppage.

Unlike *Kinney*, in which the California Court of Appeal found sufficient evidence to raise a triable issue of fact, here NAVFAC did not employ a site safety supervisor. Rather, the SSHO was employed by Dick Pacific, and the Government merely retained general oversight of the project. Additionally, NAVFAC did not have the right to order that specific safety measures be employed on the jobsite. Although NAVFAC would provide notice to Dick Pacific if it became aware of noncompliance, Dick Pacific would be responsible for employing the appropriate measures in order to come into compliance. *See* Buhain Dep. 108:13–25, May 24, 2011, Ex. 2, ECF No. 111. Unlike the defendant in *Kinney*, NAVFAC did not "claim[] the power to control all safety procedures on the worksite." 87 Cal. App. 4th at 30. The situation here is more similar to that in *Zamudio*, in which the California Court of Appeal found there was not sufficient evidence to raise a triable issue of fact, because like the *Zamudio* defendants, NAVFAC made daily inspections for contract quality assurance purposes, but did not direct or order the specific methods and procedures Dick Pacific employed regarding safety precautions.

Based upon the foregoing, the court finds that the degree of control retained by NAVFAC with respect to safety conditions was "merely the general right to order the work stopped or resumed [and] to inspect its progress or to receive reports," which is not sufficient to establish a duty. *See* RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 56 cmt. c.

### 2. Affirmative Contribution to Plaintiff's Injuries

The California Supreme Court has held that imposition of tort liability is determined by whether the hirer of an independent contractor exercised its retained control over safety conditions in a manner that affirmatively contributed to the injury. *Hooker*, 27 Cal. 4th at 202. The court elaborated,

> Such affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury.

*Id.* at 212 n.3.

In *Hooker*, the plaintiff was the widow of a crane operator employed by a contractor which was hired by the California Department of Transportation ("Caltrans") to construct an overpass. Due to space constraints on the overpass, the operator would retract the crane's outriggers to allow construction and Caltrans vehicles to pass. On one occasion when he retracted the outriggers, the crane operator attempted to swing the boom without first re-extending the outriggers. The weight of the boom caused the crane to tip over, and the operator was thrown to the pavement and killed. *Id.* at 202. The court found that by merely permitting traffic to use the overpass, Caltrans did not affirmatively contribute to the crane operator's death because it did not order the crane operator to retract his outriggers. The court held that merely permitting an unsafe condition and practice to occur, rather than directing it to occur, and failing to exercise its retained authority to correct the unsafe condition did not constitute affirmative

...

contribution. *Id*. at 215. The court found summary judgment in favor of Caltrans was appropriate.

The facts of *Kinney*, *supra*, are very similar to the instant case. In *Kinney*, an employee of a subcontractor was injured when he fell from a scaffold. He sued the general contractor, which had power to control all safety procedures on the worksite, for negligent exercise of retained control. The court held:

> [A] general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. *The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff.* Insofar as section 414 might permit the imposition of liability on a general contractor for mere failure to intervene in a subcontractor's working methods or procedures, without evidence that the general contractor affirmatively contributed to the employment of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor."

87 Cal. App. 4th at 39 (emphasis added).

As discussed above, the Government did not retain sufficient control over safety conditions to trigger a duty. Even if the Government did retain such control, the record indicates that it did not exercise the retained control in a way that affirmatively contributed to Plaintiff's injury. Plaintiff argues that Site Safety and Health Officer Jeff Santos, who was employed by Dick Pacific, failed to make daily inspections of scaffolds per the Tank #2 Activity Hazard Analysis and that NAVFAC failed to dismiss the SSHO and halt work due to the SSHO's failure to fulfill his duties. The record indicates that NAVFAC's employees were not in the vicinity at the time of Plaintiff's fall. *See* Mot. to Dismiss at 3, ECF No. 96. Further, Dick Pacific was solely responsible for the materials, assembly, and modification of the scaffold. *See* Buhain Aff. ¶ 21, Ex. B, ECF No. 96-1; Reyes Dep. 105:8–13, Ex. D, ECF No. 153-4; Santos Dep. 62:7–19, Ex. F, ECF No. 153-6. There is no indication that NAVFAC supervised or directed the method of assembly, modification, or maintenance of the scaffold. *See* Buhain Aff. ¶ 22, Ex. B, ECF No.

96-1. In fact, NAVFAC was not notified that the scaffold was modified to three tiers until after Plaintiff's accident. *See* Santos Decl. 295:1–16, Ex. A, ECF No. 96-1. Additionally, nothing in the record suggests that NAVFAC directed Dick Pacific or the SSHO to inspect scaffolds only on the days they were to be used rather than on a daily basis.

In sum, there is no evidence in the record of any affirmative act by the Government which contributed to Plaintiff's fall. Pursuant to *Hooker* and *Kinney*, the Government' failure to exercise its right to dismiss the SSHO or stop work if the SSHO failed to properly perform his duties does not, without more, violate a duty (if any) owed to Plaintiff. Accordingly, Plaintiff has failed to demonstrate a genuine dispute as to any material fact with respect to the retained control theory of direct liability.

### 3. Duty to Warn

Plaintiff contends that the R&R did not address Defendants' duty to warn of the danger of the scaffold. Pl.'s Objection at 7, ECF No. 180. The R&R noted that paragraph 33 of the TAC included an allegation that Defendants failed to warn Plaintiff of the danger in working on an unsafe scaffold. R&R at 26, ECF No. 179. It then stated that "Plaintiff's negligence arguments can be categorized as falling under the general umbrella of a duty to provide a safe working environment and a duty of reasonable care with regard thereto." *Id*. The analysis of the duty to warn was subsumed within the general duty inquiry. Similarly, here, the duty to warn analysis is subsumed within the reasonable exercise of retained control inquiry above. *See* RESTATEMENT (THIRD) OF TORTS: PHYSICAL & EMOTIONAL HARM § 18 cmt. a ("A failure to warn of the risks created by the actor's conduct can be negligence on the part of the actor under § 3 [Negligence]; this Section discusses how § 3 applies to warning claims."). As discussed above, Plaintiff has failed to demonstrate a genuine dispute as to any material fact with respect to negligent retention

of control. Likewise, Plaintiff has failed to demonstrate a genuine dispute as to any material fact with respect Defendants' duty to warn of the danger of the scaffold.

## C. Premises Liability

In the Objection, Plaintiff argues that the R&R did not consider Defendants' status as landowner in determining whether Defendants owed Plaintiff a duty to provide a safe work environment. Pl.'s Objection at 4, ECF No. 180. The Supreme Court of Guam has recognized that the standard of care articulated in 18 Guam Code Ann. § 19107 applies to landowners. *See Nissan Motor Corp. v. Sea Star Group Inc.*, 2002 Guam 5 ¶ 11. Accordingly, under Guam law, "every landowner owes a duty to exercise reasonable care in the management of his property." *Guerrero*, 2006 Guam 2 ¶ 10 (quoting *Nissan*, 2002 Guam 5 ¶ 11). Similarly, under California law, the "proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others." *Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 672 (2005).

In *Kinsman*, the California Supreme Court held that a "landowner may be independently liable to the contractor's employee, even if it does not retain control over the work, if (1) the landowner knows or reasonably should know of a concealed, pre-existing hazardous condition on its premises; (2) the contractor does not know and could not reasonably ascertain the condition; and (3) the landowner fails to warn the contractor." 37 Cal. 4th at 675. However, the court "emphasize[d] that the holding would not apply to a hazard created by the independent contractor itself, of which that contractor necessarily is or should be aware." *Id*. at 675 n.3 (citing *Zamudio*, *supra*, 70 Cal. App. 4th at 455).

Here, both the investigation by Dick Pacific and the report by NAVFAC concluded that the causes of Plaintiff's fall were that the scaffold was modified incorrectly and a competent

person was not present and did not inspect or certify modifications to the scaffold. Therefore, the only "hazardous condition" which caused Plaintiff's fall was the scaffold, which was created and maintained by Dick Pacific, not Defendants. *See* Santos Dep. 62:7–19, ECF No. 153-6. Since the hazardous condition was not pre-existing as it was created by Dick Pacific, the first element is not satisfied. Consequently, Plaintiff has failed to demonstrate a genuine dispute as to any material fact with respect to premises liability.

### D. Contractual Duties of Defendants

In the Objection, Plaintiff references various "contractual duties" owed by Defendants. Plaintiff asserts that Defendants owed a "contractual duty to enforce Dick Pacific's compliance with applicable safety regulations," a "contractual duty—a requirement—to dismiss the SSHO or stop the work if he was failing to perform his duties," and a "contractual duty to take action to ensure the safety of the work environment." Pl.'s Objection at 7, ECF No. 180. However, as discussed *supra* in section IV(B)(1), the contract between NAVFAC and Dick Pacific placed responsibility for safety on Dick Pacific. As the R&R correctly concluded:

> The Government's right to inspect does not exist for the purpose of ensuring that the employees of the contractor are performing safely under their work environment, but rather for the purpose of making sure the contractor meets contract specifications and that the Government receives the product that it has bargained for under the contract. The Government's right to undertake inspections under the contract for the purpose of making sure that the contractor meets specifications is not obligation.

R&R at 20–21, ECF No. 179.

Moreover, even if the contract did give rise to such contractual obligations, Plaintiff can enforce the contract only if he is a third-party beneficiary. "A contract, made for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." 18 GUAM CODE ANN. § 85204. However, "[t]here is a legal presumption against, not in favor of, third-party beneficiary agreements, and absent any *clear indication in the contract that the parties*

*intended to confer a direct benefit to the third party*, the third party may not maintain an action as a third-party beneficiary." 17B C.J.S. *Contracts* § 845 (updated June 2013) (emphasis added). Additionally, as Plaintiff has failed to allege a cause of action based in contract in the TAC, the court finds Plaintiff's arguments regarding Defendants' *contractual* duties to be inapposite.

## V. CONCLUSION

Based on the discussion above, the court hereby accepts and adopts the Magistrate Judge's Report and Recommendation on this matter, and **GRANTS IN PART** Defendants' Motion to Dismiss and **GRANTS** Defendants' Motion for Summary Judgment.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
    **Chief Judge**
**Dated: Sep 30, 2013**